NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSE LLORENTE, | Civil No. 11-6940 (DMC) |
| Petitioner, | |
| v. | OPINION |
| ERIC H. HOLDER, et al., | |
| Respondents. | |

APPEARANCES:

    JOSE LLORENTE, A 039 045 628
    Bergen County Jail
    160 River Street
    Hackensack, New Jersey 07601
    Petitioner Pro Se

    AARON S. GOLDSMITH, Senior Litigation Counsel
    Office of Immigration Litigation, District Court Section
    450 Fifth Street, NW, Room 6224
    Washington, DC 20001
    Attorneys for Respondents

CAVANAUGH, District Judge:

    On November 15, 2011, Jose Llorente, a native and citizen of Columbia, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal period mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of respondents and the Department of Homeland Security ("DHS"), since November 13, 2009. Respondents filed an Answer, a declaration, and several exhibits, arguing that, because Llorente's order of removal became administratively final on March 1, 2012, when the Board of Immigration Appeals

("BIA") dismissed his appeal from the order of removal, his detention is no longer governed by 8 U.S.C. § 1226, and Petitioner's challenge to his pre-removal period detention under § 1226(c) is therefore moot. Llorente filed several affidavits and other documents, arguing that, since he filed a petition for review and motion to stay removal in the Second Circuit, his detention is still governed by 8 U.S.C. § 1226(c) and, because his detention is unreasonable under Diop v. ICE/Homeland Security, 656 F.3d 221 (3d Cir. 2011), and/or governed by 8 U.S.C. § 1226(a) (since he was not taken into custody "when released"), he is entitled to a writ of habeas corpus ordering a bond hearing.

This Court rejects DHS's contention that the Petition is moot, but will nevertheless deny habeas relief because, on the present facts and in the absence of a stay of removal, Llorente's detention does not violate the Constitution, laws or treaties of the United States. See 28 U.S.C. § 2241(c)(3). However, the denial of the Petition is without prejudice to the filing of a new petition in the event that either: (1) the Second Circuit grants a stay of Petitioner's removal, in which case Petitioner's detention would once again be governed by § 1226(c) until the Second Circuit enters a final order in his petition for review, see Leslie v. Attorney General of the U.S., __ F.3d __, 2012 WL 898614 at *4 (Mar. 19, 2012), or (2) Llorente has been detained for more than six months (without a stay) after March 1, 2012, and he can provide good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future, see Zadvydas v. Davis, 533 U.S. 678, 701 (2001).

## I. BACKGROUND

Jose Llorente, a native and citizen of Columbia, challenges his detention in the custody of DHS at Bergen County Correctional Facility in Hackensack, New Jersey. The facts are

undisputed. Llorente was most recently admitted to the United States as a lawful permanent resident on December 28, 1984. On November 13, 2009, DHS took Llorente into custody and detained him pursuant to 8 U.S.C. § 1226(c), charging him with removal under INA section 237(a)(2)(A)(ii) based on multiple convictions of crimes of moral turpitude. DHS filed additional charges of removability on April 8, 2010, April 12, 2010, and July 28, 2010. On November 10, 2011, the Immigration Judge ordered Llorente removed. Llorente filed the § 2241 Petition presently before this Court on November 15, 2011. Llorente appealed the order of removal to the BIA, and on March 1, 2012, the BIA dismissed the appeal. On March 9, 2012, Llorente filed a petition for review in the Second Circuit, together with a motion for stay of removal, which are pending before that court. See Llorente v. Holder, C.A. Docket No. 12-0946 (2d Cir. docketed Mar. 9, 2012).

On March 6, 2012, DHS filed an Answer, together with the declaration of Christopher Harrigan and copies of the order of removal and the BIA's March 1, 2012, decision. DHS argues that the action is moot because Llorente's detention is no longer governed by § 1226. Petitioner argues that, since he filed a petition for review and motion for a stay, his detention is still governed by § 1226(c), and that his prolonged detention under § 1226(c) since November 13, 2009, without a bond hearing, violates due process.

## II. DISCUSSION

A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two

requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Bete was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized and violates due process. See Zadvydas, 533 U.S. at 699.

B. Relevant Statutes

The statutory authority to detain an alien depends on where the alien is in the removal process. See Leslie, 2012 WL 898614 at *4. Section 1226 governs the pre-removal-period detention of an alien. Id. Section 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B), and § 1231(a)(6) provides the discretionary authority to detain aliens beyond the removal period, or release them under supervision. See 8 U.S.C. §§ 1226, 1231.

Section 1226(a) authorizes the arrest, detention and release of aliens pending a decision on whether the alien is to be removed from the United States, except as provided in § 1226(c).[1] See 8 U.S.C. § 1226(a). Section § 1226(c), an exception to § 1226(a), mandates detention of specified criminal aliens during removal proceedings, provided detention does not continue for a prolonged period of time. See 8 U.S.C. § 1226(c); Diop v. ICE/Homeland Sec., 656 F. 3d at 232 ("At a certain point, continued detention becomes unreasonable and the Executive Branch's

---

[1] Section 1226(b) authorizes the Attorney General to "at any time . . . revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).

implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community").

Section 1226 provides in full:

>    (a) Arrest, detention, and release
>
>    On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) of this section and pending such decision, the Attorney General –
>
>    (1) may continue to detain the arrested alien; and
>
>    (2) may release the alien on –
>
>       (A) bond of at least $1,500 . . ; or
>
>       (B) conditional parole; but
>
>    (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.
>
>    (b) Revocation of bond or parole
>
>    The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.
>
>    (c) Detention of criminal aliens
>
>    (1) Custody
>
>    The Attorney General shall take into custody any alien who -
>
>    (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.[2]

---

[2] In Diop, the Third Circuit held that 8 U.S.C. "§ 1226(c) contains an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length . . . . Should the length of [an alien's] detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof." Diop, 656 F.3d at 235. The Third Circuit held that Diop's mandatory pre-removal period detention of 35 months was unreasonable in length. Id. at 233.

Section 1231(a)(1)(A) provides that, "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) provides that "[d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). Section 1231(a)(1)(C) provides that "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

Under § 1231(a)(1)(B), the removal period begins **at the latest** of several events, including the date of the final order of the Court of Appeals, if the removal order is judicially reviewed and the Court has ordered a stay of removal. Specifically, § 1231(a)(1)(B) provides:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) provides the discretionary authority to detain aliens beyond the removal period or release them under supervision. See 8 U.S.C. § 1231(a)(6). Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).[3]

B. Mootness

The exercise of judicial power depends upon the existence of a case or controversy because Article III of the Constitution limits the judicial power of federal courts to "cases or controversies" between parties. U.S. CONST. art. III, § 2. "This "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have 'a personal stake in the outcome' of the lawsuit." Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (citation and internal quotation marks omitted).

---

[3] In Zadvydas, the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. The Court cautioned that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)]." Id. at 699. To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. See also Clark v. Martinez, 543 U.S. 371, 384 (2005).

In this case, Llorente's Petition challenges his pre-removal period detention under § 1226(c) since November 13, 2009, without a bond hearing. DHS argues that the challenge to detention under § 1226(c) without a bond hearing became moot on March 1, 2012, when the BIA dismissed his appeal, because on that date, his order of removal became administratively final, his removal period began, and he is now mandatorily detained during the 90-day removal period.

As the Third Circuit noted in Leslie, pre-removal period detention under § 1226(c) ends when the removal period begins under 8 U.S.C. § 1231(a)(1)(B). But the removal period can shift, since by statute it begins **on the latest of three dates**: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed **and** if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. See 8 U.S.C. § 1231(a)(1)(B).

In this case, subsection (iii) does not apply because Llorente has not been detained for non-immigration purposes. Subsection (ii) does not apply at this time because, although Llorente has filed a petition for review and a motion for a stay which are pending before the Second Circuit, no court has granted a stay of removal. At this point in time and in the absence of a stay, Llorente's removal period began on March 1, 2012, when the BIA affirmed the order of removal and the removal order became administratively final.[4] See 8 U.S.C. § 1231(a)(1)(B)(i).

---

[4] "The term 'order of [removal]' means the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is [removable], concluding that the alien is [removable] or ordering [removal]." 8 U.S.C. § 1101(a)(47)(A). An order of removal becomes "final upon the earlier of –(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board (continued...)

Although Llorente is now detained during the 90-day removal period, as required by 8 U.S.C. § 1231(a)(2), this does not necessarily mean that his § 2241 Petition challenging his pre-removal period detention under § 1226 is moot. Cases that are "capable of repetition yet evading review" fall within an exception to mootness. See Turner v. Rogers, 131 S.Ct. 2507, 2515 ( 2011); Diop, 656 F.3d at 227-28. "This exception applies when '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" Diop, 656 F.3d at 227 (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).

In Diop, the Third Circuit held that Diop's constitutional challenge to his prolonged detention under § 1226(c) did not become moot when DHS released Diop from detention because the case fell within the "capable of repetition yet evading review" exception to mootness. The facts of Diop are as follows. On March 19, 2008, DHS took Diop into custody and served a notice to appear for removal charging him with removal based on a 2005 Pennsylvania conviction for recklessly endangering another person. On May 27, 2008, DHS charged that Diop was also removable as an alien convicted of a crime relating to a controlled substance, based on a 1995 Pennsylvania conviction for possessing a controlled substance with the intent to manufacture or deliver it. On July 21, 2009, Diop filed a § 2241 petition in the United States District Court for the Middle District of Pennsylvania arguing that DHS violated

---

[4](...continued)
of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). See Giraldo v. Holder, 654 F.3d 609, 611 (6th Cir. 2011); Hakim v. Holder, 611 F.3d 73, 77 (1st Cir. 2010); Chupina v. Holder, 570 F.3d 99, 103 (2d Cir. 2009); United States v. Calderon-Minchola, 351 Fed. App'x 610, 611 n.1 (3d Cir. 2009); Del Pilar v. U.S. Attorney General, 326 F.3d 1154, 1156 (11th Cir. 2003). A petition for review "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1).

due process by detaining him pursuant to § 1226(c) for a prolonged period of time without a bond hearing. On October 29, 2009, the District Court denied the petition. Diop filed a timely notice of appeal. While the matter was on appeal before the Third Circuit, on November 3, 2010, the Pennsylvania Court of Common Pleas vacated Diop's 1995 conviction pursuant to Padilla v. Kentucky, 130 S. Ct. 1473 (2010). Pennsylvania appealed. On January 20, 2011, DHS reversed its litigating position before the Immigration Judge and filed a motion in that court stating that Diop was immediately eligible for withholding of removal based on the vacatur of the 1995 conviction, even though the vacatur was on appeal and the 2005 conviction remained intact. On February 24, 2011, after 1072 days of detention, the Immigration Judge granted withholding of removal and Diop was released from custody on bond. At that point, DHS filed a motion in the Third Circuit arguing that Diop's appeal from the order denying his § 2241 petition became moot when Diop was released from custody.

The Third Circuit ruled that Diop's pre-removal-period detention under § 1226(c) satisfied the first Weinstein prong (the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration) because "mootness would likely doom almost any attempt to challenge the lawfulness of pre-removal detention." Diop at 227. The Third Circuit ruled that Diop's case satisfied the second Weinstein prong because his pre-removal period detention under § 1226(c) was capable of repetition: "Should the vacatur of his 1995 conviction be overturned [by the state appellate court] - a possibility that is far from remote - Diop would once again be ineligible for withholding of removal and the Government's position in this appeal - that 8 U.S.C. § 1226(c) requires Diop's detention without a bond hearing - would lead it to once again place Diop in confinement [pursuant to § 1226(c)]." Id. at 228. Moreover, since DHS was

11

free to again detain Diop under § 1226(c) on the basis of his 2005 conviction, the Third Circuit observed that "Diop's freedom is based on little more than governmental grace, subject to change at its discretion." Id. The Third Circuit held that, because "it is reasonable for Diop to fear that he might once again be the subject of lengthy removal proceedings and pre-removal detention at any time," his case fell into the mootness exception. Id.

In this case, DHS has not carried its burden of showing that it is not reasonable for Llorente to fear that he might once again be the subject of lengthy mandatory pre-removal period detention under § 1226(c). Should the Second Circuit grant Llorente's motion to stay his order of removal - a possibility that is far from remote - Llorente would once again be mandatorily detained without a bond hearing under 8 U.S.C. § 1226(c) until "the date of the [Second Circuit]'s final order." 8 U.S.C. § 1231(a)(1)(B)(ii). Under these circumstances, DHS has not shown that Llorente's § 2241 Petition is moot. See Diop, 656 F.3d at 227-28.

C. Legality of Llorente's Detention

Although the Petition is not moot, Llorente is not entitled to a writ of habeas corpus unless he shows that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). At this point in time, where no stay has been granted, Llorente's removal period began on March 1, 2012. See 8 U.S.C. § 1231(a)(1)(B)(ii) ("The removal period begins on the latest of the following . . . (i) The date the order of removal becomes administratively final"). Section 1231(a)(2) expressly states that "[d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). Since Llorente is not currently confined under § 1226(c), the holding in Diop - § 1226(c) authorizes detention without a bond hearing only for a reasonable period of time - does not apply to Llorente's present

detention. Llorente's present detention is statutorily authorized (and mandated) by § 1231(a)(2), and his present detention does not violate due process under the holding of Diop. This Court will deny habeas relief because Llorente's present detention does not violate the Constitution, laws or treaties of the United States. See 28 U.S.C. § 2241(c)(3). However, the denial of relief is without prejudice to the filing of a new § 2241 petition in the event: (1) the Second Circuit grants Llorente's motion to stay his order of removal, in which case Llorente's detention will revert to § 1226(c) until the Second Circuit issues a final order, or (2) DHS fails to remove Llorente after he has been detained under § 1231(a)(6) for more than six months and Llorente can assert facts showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701.

### III. CONCLUSION

For the reasons set forth above, the Court denies the Petition.

_____
DENNIS M. CAVANAUGH, U.S.D.J.

DATED: _____April 10_____, 2012